UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WAGNER-MEINERT ENGINEERING, LLC, and WAGNER-MEINERT LLC, | |
| Plaintiffs, | |
| v. | CAUSE NO. 1:21-CV-313 DRL-SLC |
| TJW INDUSTRIAL, INC., JOSEPH WAGNER, JUAN ARAMBULA, JR., RYAN SCHROEDER, and JAMES WAGNER, | |
| Defendants. | |

OPINION & ORDER

WMI—a commercial and industrial refrigeration and engineering business collectively referring to Wagner-Meinert Engineering LLC and Wagner-Meinert LLC—claims that its prior owners left the business only to misappropriate trade secrets for the benefit of a competing business known as TJW Industrial, Inc. WMI pursues trade secret, contract, and various tort claims. The defense requests the dismissal of certain claims. The court grants the motion only in part.

BACKGROUND

For purposes of this motion to dismiss, the court accepts all well-pleaded allegations as true. In 2011, Joseph Wagner was a member of WMI, formerly owning a 3.6 percent stake in the company. Pursuant to the operating agreement, he agreed to protect WMI's proprietary and confidential information and not to disclose this information without the company's written permission during and after his employment. He further agreed to a 42-month non-solicitation and non-competition covenant [ECF 1-1 § 14.02].

In 2015, Joseph Wagner sold his shares in WMI for $1,316,844. He remained an employee, negotiating his employment contract the next year to receive an annual salary and bonus of $180,000

and an annual retention bonus of $100,000. This 2016 employment contract extended the terms of the 2011 non-competition provisions until June 22, 2019.

Joseph Wagner resigned his position on October 19, 2018. He continued to receive a salary until June 22, 2019. On January 8, 2019, more than five months before his restrictive covenants expired according to the complaint, he registered articles of incorporation for TJW Industrial, Inc. TJW Industrial performs commercial and industrial refrigeration and engineering services and competes with WMI.

Juan Arambula Jr., James Wagner, and Ryan Schroeder all worked for WMI in various roles before leaving the company in the late summer 2019 to work for TJW Industrial. Juan Arambula, Joseph Wagner, and James Wagner all were subject to non-solicitation provisions, but allegedly poached numerous WMI employees with access to confidential information to work at TJW Industrial—leading to a majority of TJW Industrial's workforce coming from WMI. The complaint alleges these employees performed work for TJW Industrial or shared proprietary information while still employed by WMI, including downloading information from WMI's servers, providing TJW Industrial with trade secrets, and soliciting WMI's clients. WMI employees were subject to confidentiality provisions.

WMI also alleges that Juan Arambula secretly brokered the sale of a tool from WMI to TJW Industrial while he was still at WMI. In an effort at sabotage, James Wagner is alleged to have deleted a significant number of files from his WMI computer, including those related to active projects, taken with him a computer owned by WMI, and informed several WMI customers that active projects were in fact inactive. Ryan Schroeder is alleged to have copied WMI's intellectual property onto external drives and facilitated James Wagner taking the computer.

The complaint focuses on misappropriating activity. WMI alleges that TJW Industrial took numerous actions to misappropriate WMI's trade secrets, goodwill, or other property. The intellectual

property TJW Industrial acquired included customer files used for quoting and pricing jobs, project bid files, quoting and estimating software and data, labor factors, software, vendor catalogs, annotated searchable manuals, and the company's CAD library, including notes, comments, and information compiled and created by WMI.

In total, WMI advances eight claims against TJW Industrial and former WMI owners or employees: one under the federal Defend Trade Secrets Act and another under the Indiana Trade Secrets Act (counts 1 and 2); tortious interference with a contract (count 3); breach of contract against Joseph Wagner (count 4); conversion against TJW Industrial (count 5); an offense against intellectual property claim (count 6); unfair competition against TJW Industrial (count 7); and breach of the duty of loyalty against the four individual defendants (count 8). WMI casts two requests for injunctive relief—one against Joseph Wagner and TJW Industrial and one against all defendants—as additional counts (counts 9 and 10). The defense seeks to dismiss counts 3 and 5-10.

## STANDARD

In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[W]ritten instruments attached to a pleading become part of that pleading for all purposes." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (quotation and citation omitted). The complaint must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on

3

its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

The defense seeks to dismiss seven claims. The defense argues that, to the extent these claims hinge on the misappropriation of trade secrets or confidential information not otherwise considered a trade secret, the Indiana Uniform Trade Secrets Act (IUTSA) proves the only remedy. The IUTSA has a preemption provision that displaces conflicting law (except contract and criminal law) that relates to the misappropriation of trade secrets. Ind. Code § 24-2-3-1(c). WMI contests the scope of IUTSA's preemption clause and otherwise opposes the motion to dismiss.

A. *The IUTSA Includes an Expansive Preemption Provision.*

In 1982, the General Assembly enacted the IUTSA "to make uniform the law" of trade secrets "among states enacting the provisions of this chapter." Ind. Code § 24-2-3-1(b); *see also HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 922-23 (Ind. Ct. App. 2012), *trans. denied* 980 N.E.2d 322 (Ind. 2012). To effectuate its aim, the IUTSA "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." Ind. Code § 24-2-3-1(c). The General Assembly worded this preemption provision more strongly than the one within the uniform act on which it was based. *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1033 (Ind. 2004).

This case presents the question whether the IUTSA preempts claims based on the theft of confidential or proprietary information that may not rise to the level of a trade secret; though, as it turns out here after all briefing, the motion presents a narrower question of whether the civil conversion claim is preempted.

The Indiana Supreme Court has not decided this issue. The Indiana Court of Appeals has interpreted the IUTSA's preemption provision broadly, approving a view that it "abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret

4

information falling short of trade secret status (*e.g.* idea misappropriation, information piracy, theft of commercial information, etc.)," including claims that "merely outline[] another allegation of civil misappropriation of [a plaintiff]'s ideas." *HDNet*, 972 N.E.2d at 924-25, 927 (approving *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 235 P.3d 310, 321 (Haw. 2010) (quoting *Hauck Mfg. v. Astec Indus.*, 375 F. Supp.2d 649, 655 (E.D. Tenn. 2004)); *cf. AGS Capital Corp. v. Prod. Action Int'l, LLC*, 884 N.E.2d 294, 308 (Ind. Ct. App. 2008) (finding no preemption of civil RICO claim).

In *HDNet*, the HD television channel engaged the North American Boxing Council (NABC) in discussions to broadcast mixed martial arts bouts. The two parties exchanged emails to flesh out this concept for a uniquely branded fight series. NABC viewed the information as a protectible commercial idea. *HDNet*, 972 N.E.2d at 921. NABC later sued HD. The council claimed that HD's owner formed HDNet Fights for the purpose of using this confidential and proprietary idea. NABC advanced several claims, including idea misappropriation and trade secret conversion. The trial court found that NABC's claims were not preempted by the IUTSA. *See id.* at 922.

NABC defended this ruling on interlocutory appeal, arguing that IUTSA's plain language only applied to actions when a conflicting law pertained to the misappropriation of "trade secrets." NABC said its claims concerned something less than a statutorily-defined "trade secret" such that its claims should not be preempted. The Indiana Court of Appeals disagreed and reversed.

The state court regarded the legislature's directive that the IUTSA be "applied and construed to effectuate its general purpose to make uniform the law," Ind. Code § 24-2-3-1(b), as requiring more than a narrow reading of "trade secrets" to enforce the IUTSA as a uniform whole, *HDNet*, 972 N.E.2d at 924. The court cited with approval the majority of jurisdictions that have held the same. The court said the original UTSA created a "two-tiered approach to protection of commercial knowledge, under which information is classified only as either a protected trade secret or unprotected general skill and knowledge." *Id.* at 925 (quotations and citations omitted). The court held that the

plain reading of IUTSA's preemption provision offered by NABC would "lay[] waste to both legislative intent of the IUTSA and the overall intent of the UTSA." *Id.* at 927. The Indiana Court of Appeals accordingly found the idea misappropriation and civil conversion claims preempted.

WMI says the Indiana Court of Appeals got it wrong. WMI invites the court to predict that the Indiana Supreme Court would rule differently. WMI asks the court to reject this broad preemption interpretation and allow the company to move forward with its claims as they relate to the misappropriation of not just trade secrets, but also not-quite trade secrets.

When a federal court sits in diversity and applies state law, it looks to the law as stated by the state supreme court or endeavors to decide the matter as the state supreme court would. *BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland*, 679 F.3d 643, 648 (7th Cir. 2012), *as amended* (July 13, 2012). "If the state supreme court has not spoken on a particular issue, then decisions of the intermediate appellate court will control unless there are persuasive indications that the state supreme court would decide the issue differently." *Id.* (quotations and citation omitted); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940). This so-called "Erie guess"—a prediction of how the state's highest court would rule—accounts for the state's intermediate court decisions, trends in these decisions, and persuasive decisions in other jurisdictions. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 811-12 (7th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

The court proceeds cautiously when predicting what a state supreme court may do for "federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999). As a principle of federalism, "a federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy." *Id.* at 1093. When a state supreme court has been given the opportunity to address an issue but declined to do so, *see West*, 311 U.S. at 237, or the issue is not otherwise appropriate for

certification, *see State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 673 (7th Cir. 2001), a federal court will apply the law as it exists.

WMI offers four reasons why the Indiana Supreme Court might decide the issue differently than *HDNet*: (1) the Indiana Supreme Court promulgated Commercial Court Rule 2(E)(2) to give commercial courts the power to hear disputes involving "patents, trademarks, service marks, copyrights, trade secrets, or other intellectual property," thereby treating trade secrets and other intellectual property differently, *see In re Ind. Com. Cts*, 121 N.E.3d 537, 539 (Ind. 2019); (2) the Indiana General Assembly amended the Crime Victims Relief Act to provide a remedy for certain computer-based offenses; (3) *HDNet*'s broad interpretation of "trade secret" would preempt Indiana's cause of action for common law trademark infringement; and (4) appellate construction of the statute swells the plain meaning of "trade secret" to include other forms of proprietary information.

Creative though they be, WMI's initial three arguments merely present conjecture as to what the Indiana Supreme Court would do, not persuasive indications. *See West*, 311 U.S. at 237-38 ("Even though it is arguable [] that the Supreme Court of Ohio will at some later time modify the rule of the West case, whether that will ever happen remains a matter of conjecture."). For instance, a separate commercial court rule using altogether different language offers little insight on the legislative language in the IUTSA. It may reveal how the Indiana Supreme Court might craft a rule, but not the Indiana General Assembly's intent in adopting a uniform statute. The General Assembly's 2017 amendment to the Crime Victims Relief Act offers no insight on the scope of IUTSA's preemption provision, not least when the legislature may layer statutory remedies as it prefers and when this amendment occurred years after *HDNet*'s interpretation of the IUTSA. The perceived risk to common law trademark claims isn't an issue today; and it seems overwrought when a trademark presupposes public use and apprehension, whereas the IUTSA presupposes secrecy. *Compare Keaton & Keaton v. Keaton*, 842 N.E.2d

7

816, 820 (Ind. 2006) (likelihood of confusion as to source of goods); McCarthy on Trademarks and Unfair Competition § 23:1.50 (5th ed.), *with* Ind. Code § 24-2-3-2; *HDNet*, 972 N.E.2d at 924-25.

That then leaves WMI's last point. WMI criticizes *HDNet* for going beyond the plain meaning of trade secret in the IUTSA. The IUTSA defines trade secret to mean "information, including a formula, pattern, compilation, program, device, method, technique, or process, that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ind. Code § 24-2-3-2. The IUTSA defines misappropriation in various ways but likewise always in reference to a trade secret—for instance, acquisition of a "trade secret" through improper means or use of a "trade secret" without consent. Ind. Code § 24-2-3-2. WMI thus argues that the preemption provision that "displaces all conflicting law of this state pertaining to the *misappropriation* of *trade secrets*" cannot extend to the misappropriation of something other than a trade secret. *See, e.g.*, *United States v. Texas*, 507 U.S. 529, 534 (1993) ("to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law").

The Indiana Court of Appeals considered this argument and instead concluded that a narrow textual reading of the preemption provision would ignore the legislative instruction to craft a nationally uniform system for protecting trade secrets. *See HDNet*, 972 N.E.2d at 924; *see also* Ind. Code § 24-2-3-1(b) (IUTSA shall be applied and construed to make it uniform with other states). The Indiana Court of Appeals considered the General Assembly's intent and case law from other adopting jurisdictions, concluding that the majority of jurisdictions applied the preemption provision to claims based on proprietary and other confidential information, not just trade secrets. *See HDNet*, 972 N.E.2d at 924-25. WMI has not argued, much less cited cases that show, that this national trend has shifted. *See, e.g., Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (interpreting Illinois statute that

8

preempted law "providing civil remedies for misappropriation of a trade secret" to preempt claims "even when the alleged 'trade secret' does not fall with the Act's definition" based on Illinois Court of Appeals case); *Tecnomatic, S.P.A. v. Remy, Inc.*, 954 F. Supp.2d 860, 868 (S.D. Ind. 2013) (unjust enrichment claim preempted by IUTSA based on misuse of confidential information); *cf. Brand Servs., LLC v. Irex Corp.*, 909 F.3d 151, 158 n.4 (5th Cir. 2018) (citing cases demonstrating the split among uniform states but deferring to two decisions from the Louisiana Court of Appeals).

Lost in the discussion to this point is the meaning of the word "pertaining." Pertaining means "relating to." *See* Black's Law Dictionary (11th ed. 2019) ("relate directly to; to concern or have to do with"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (defining "relating to" and "pertaining" as synonymous). Such language must be read "expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018). These words in a preemption provision "express a broad preemptive purpose." *Morales*, 504 U.S. at 383; *accord Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014). Legislatures "characteristically employ[] the phrase to reach any subject that has 'a connection with, or reference to' the topics the statute enumerates." *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017); *see, e.g., United States v. Kraemer*, 933 F.3d 675, 680 (7th Cir. 2019) (reading language expansively in categorical comparison of state and federal sex crimes); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590 (7th Cir. 2001) (calling arbitration provision with "relating to" to be the "broadest possible clause" and capturing contract and fraud claims from contract negotiations). The scope of IUTSA's preemption must be construed in light of this language too.

That said, the court need not decide the full scope of the IUTSA's preemption provision today or even the ultimate reach of *HDNet* consistent with this provision and the Indiana Supreme Court's likely ruling. At this pleading stage, WMI has not provided persuasive indications that the Indiana Supreme Court would deviate from the Indiana Court of Appeals specific to the one claim that must

9

be decided today—civil conversion—particularly when that claim, as pleaded here, relates to trade secrets. The motion is otherwise resolved on other grounds.

### B. *The IUTSA Preempts the Conversion Claim (Count 5).*

WMI pursues a conversion claim based on TJW's unauthorized control over WMI's property. Claims must be stated plausibly with facts, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570, and the only "property" that WMI says was converted was its goodwill and intellectual property, including processes, data, and data tables within its Estimate Calc software. The IUTSA preempts this claim as alleged. *See* Ind. Code § 24-2-3-1(c); *HDNet*, 972 N.E.2d at 927; *see also Hartford Steam Boiler Inspection & Ins. Co. v. Campbell*, 2021 U.S. Dist. LEXIS 62332, 27 n.7 (S.D. Ind. Mar. 31, 2021) (same); *Remy, Inc. v. Tecnomatic S.P.A.*, 2014 U.S. Dist. LEXIS 86252, 36-37 (S.D. Ind. June 24, 2014) (same).

### C. *The Remaining Claims Challenged by the Motion to Dismiss Survive (Counts 3, 6-8).*

WMI advances several other claims that have an independent basis outside the IUTSA: tortious interference with a contract (count 3), *see Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994); a Crime Victims Relief Act claim based on the unlawful disclosure of computer data (count 6), *see* Ind. Code §§ 34-24-3-1, 35-43-1-7; unfair competition (count 7), *see Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598-99 (Ind. 2001); *Keaton*, 842 N.E.2d at 820; *Inst. for the Int'l Educ. of Students v. Chen*, 380 F. Supp.3d 801, 809-10 (S.D. Ind. 2019); and duty of loyalty (count 8), *see N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 187 (Ind. 2006). In addition, WMI pleads facts that plausibly support these claims beyond merely resting on the misappropriation of trade secrets.

TJW recognizes all this in reply but contends that the court should nonetheless dismiss the subset theories within these claims that concern the misappropriation of trade secrets or other confidential information. Under the circumstances today, this would not be proper—not when at least one legal theory for each claim has been plausibly pleaded. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). "A motion to dismiss

under Rule 12(b)(6) doesn't permit piecemeal dismissal of *parts* of claims." *BBL*, 809 F.3d at 325 (differentiating a summary judgment motion). The sole question remains whether the complaint alleges facts that state a plausible theory for relief, and this complaint does in counts 3 and 6-8.

      D.     *The Court Converts the Injunctive Relief "Claims" to Prayers for Relief.*

Injunctive relief is a remedy, not a claim. *See Onyango v. Downtown Entm't, LLC*, 525 F. Appx. 458, 460 (7th Cir. 2013). WMI nonetheless states claims for injunctive relief in counts 9 and 10. The court may "disregard labels and treat pleadings for what they are." *United States v. Griffin*, 782 F.2d 1393, 1399 (7th Cir. 1986); *see* Fed. R. Civ. P. 8(f) ("Pleadings must be construed so as to do justice."); *Cincinnati Ins. Co. v. Eastern Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001) (looking past labels to substance of allegations); *Baltimore & Ohio Chi. Terminal R.R. Co. v. Wis. Cent. Ltd.*, 154 F.3d 404, 407 (7th Cir. 1998) (converting defense to counterclaim). The court accordingly treats these allegations as prayers for this remedy vis-à-vis other claims and dismisses them as separate claims or "counts."

## CONCLUSION

Accordingly, the court GRANTS IN PART the motion to dismiss [ECF 17], DISMISSES the conversion claim (count 5), and CONVERTS the injunctive relief allegations from claims to prayers for relief, thereby dismissing these allegations as separate claims (counts 9 and 10). The court OTHERWISE DENIES the motion.

SO ORDERED.

February 25, 2022            *s/ Damon R. Leichty*
                                                    Judge, United States District Court