UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WAGNER-MEINERT ENGINEERING, LLC *et al.*, <br><br>    Plaintiffs, <br><br>    v. <br><br> TJW INDUSTRIAL, INC. *et al.*, <br><br>    Defendants. | |
| TJW INDUSTRIAL, INC., <br><br>    Counterclaim and Third-Party Plaintiff, <br><br>    v. <br><br> WAGNER-MEINERT ENGINEERING, LLC *et al.*, <br><br>    Counterclaim and Third-Party Defendants. | CAUSE NO. 1:21-CV-313 DRL-SLC |

OPINION AND ORDER

This suit largely concerns two competing commercial and industrial refrigeration businesses. WMI (collectively referring to Wagner-Meinert Engineering, LLC and Wagner-Meinert LLC) says its prior owners left its business only to misappropriate trade secrets for the benefit of a competing business (known as TJW Industrial, Inc.). Not to be outdone, TJW counterclaims against WMI and sues three WMI employees as third-parties (Michael Davidson, Kalen Cartwright, and Matthew Fenn) for defamation and unfair competition. TJW claims that WMI and its employees disparaged its business and engaged in predatory price cutting to run TJW out of the market. Today the court addresses four motions to dismiss—all aimed at the defamation and unfair competition claims. The court grants the motions only in part.

BACKGROUND

These facts emerge from the well-pleaded factual allegations in the crossclaim and third-party complaint because WMI and its employees filed their motions under Federal Rule of Civil Procedure 12(b)(6). The court must accept these allegations as true for purposes of deciding the motion today.

TJW specializes in industrial refrigeration and mechanical systems for customers in the food processing and cold storage industry. TJW was formed by WMI's former employees, and the two companies are engaged in federal and state litigation. TJW alleges that WMI and its employees pursued a targeted, malicious, and defamatory campaign with the express intention of putting TJW out of business and stifling fair competition. TJW says WMI and its three employees defamed TJW and engaged in unfair competition.

A.   *Allegations Specific to Michael Davidson (WMI's Chief Operating Officer).*

TJW alleges that WMI's chief operating officer, Michael Davidson, told his employees at a corporate meeting that he intended to shutter TJW through numerous lawsuits. He directed WMI's sales team to bid everything at or below cost whenever competing with TJW for a project. He thereafter copied a TJW customer on a letter to TJW that referred to their ongoing litigation: "As you likely know, [WMI] is currently involved in litigation against TJW and others regarding the improper use or taking of [WMI's] trade secrets and intellectual property." TJW claims the letter was sent to undermine its relationship with this customer.

B.   *Allegations Specific to Kalen Cartwright (WMI's Engineering and Construction Group Leader).*

TJW alleges that WMI's engineering and construction group leader, Kalen Cartwright, spoke with a company for which TJW serves as a subcontractor on a project. He informed this contractor that TJW was "under investigation" and that it has been sued for "stealing intellectual property" from WMI. He recommended that the contractor "be aware of" this information in the future. Later, at an industry convention, Mr. Cartwright told another contractor that TJW was facing a "massive lawsuit."

2

TJW claims he has made similar statements to other customers and contractors with the aim of harming TJW's reputation and winning future business for WMI.

      C.     *Allegations Specific to Matthew Fenn (WMI's Service Group Leader).*

TJW alleges that WMI's service group leader, Matthew Fenn, informed TJW's customer, which had never done business with WMI, that TJW had stolen information from WMI. He advised the customer of the pending lawsuit and implied that the customer should not do business with TJW. TJW claims that the statements, also repeated to other customers and contractors, were designed to sabotage TJW in the marketplace.

      D.     *Allegations Specific to WMI.*

TJW claims that WMI coordinated this deliberate scheme to injure TJW's reputation in the marketplace through these so-called defamatory statements and price cutting. TJW says WMI submitted bids with "drastically reduced" pricing to undercut TJW's bids. The company also claims that WMI allowed employees to wear stickers with the initials "TJW" surrounded by a circle with a slash through it at customer job sites.

## STANDARD

In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671

F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). In conducting this inquiry, the court may "consider documents incorporated by reference in the pleadings." *Orgone Cap. III, LLC v. Daubenspeck,* 912 F.3d 1039, 1044 (7th Cir. 2019).

## DISCUSSION

A.  *Defamation.*

A claim for defamation in Indiana requires a communication that "tend[s] to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). The claim protects a party's "reputation interests," *Bonzani v. Goshen Health Sys., Inc.*, 459 F. Supp.3d 1139, 1155 (N.D. Ind. 2020) (citing *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 381 (7th Cir. 2010)), and typically requires (1) a false statement made with defamatory imputation, (2) malice, (3) publication, and (4) damages, *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (citing *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006)); *Kelley*, 865 N.E.2d at 597.

The communication must be both defamatory and false. *See Kelley*, 865 N.E.2d at 596; *Ali v. Alliance Home Healthcare, LLC*, 53 N.E.3d 420, 428 (Ind. Ct. App. 2016). As relevant here, a communication is defamatory *per se* when it imputes misconduct in a person's trade, profession, or office. *See Dugan*, 929 N.E.2d at 186; *Kelley*, 865 N.E.2d at 596. This is a question of law for the court, viewing the communication in context, according to its plain meaning, without resort to extrinsic facts. *See Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999); *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014); *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 923 (Ind. Ct. App. 2002).

For a statement to be actionable, it also must be "clear that it contains objectively verifiable fact regarding the plaintiff." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015). "If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement

4

is not actionable." *Id.* In addition, the published communication must be false when it was made. *See Ali*, 53 N.E.3d at 431. Truth is a defense to a defamation claim. *See* Ind. Const. art. I, § 10 ("In all prosecutions for libel, the truth of the matters alleged to be libelous may be given in justification."); *Cmty. Found. of Nw. Ind., Inc. v. Miranda*, 120 N.E.3d 1090, 1104 (Ind. Ct. App. 2019).

        1.    *Defamation Claim against Michael Davidson.*

TJW alleges Mr. Davidson defamed the company when he informed WMI employees of his intention to "sue TJW out of business" at a company meeting and when he sent a letter, copied to a TJW customer, saying "[a]s you likely know, [WMI] is currently involved in litigation against TJW and others regarding the improper use or taking of [WMI]'s trade secrets and intellectual property." Mr. Davidson contends that these statements were true. In response, TJW abandons a defamation claim based on the employee meeting and focuses on the letter alone.

Whether the statement about the litigation might carry a defamatory imputation, thereby undermining the integrity of TJW's business, the company has not established that the statement was false. At the time Mr. Davidson made his statement, WMI and TJW were involved in ongoing litigation about the improper use of WMI's trade secrets, as alleged. TJW says this statement will eventually be proven false in the course of the litigation, but whatever a judge or jury may eventually conclude, the statement wasn't false when it was made. *See Ali*, 53 N.E.3d at 431; *see, e.g., Conwell v. Beatty*, 667 N.E.2d 768, 774 (Ind. Ct. App. 1996) ("Whether falsities were later discovered as to those facts is immaterial; at the time [the declarant] made the statement, he accurately reported the status of the investigation.").

TJW also argues that WMI cannot hide behind the protective shield of its complaint to disseminate defamatory statements, citing *Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia & Vician, P.C.*, 2001 U.S. Dist. LEXIS 7874, 27 (S.D. Ind. Apr. 25, 2001). *See also ABRO Indus. v. 1NEW Trade, Inc.*, 2017 U.S. Dist. LEXIS 179792, 53 (N.D. Ind. Oct. 30, 2017). But the defense to the defamation claim today is truth, not absolute privilege. *Bowman* concerned a claim that a company had in bad faith

included false statements in its complaint and then disseminated its complaint to a firm's business associates. *See Bowman*, 2001 U.S. Dist. LEXIS 7874 at 27. The district court concluded that absolute privilege covered the statements when made in court, but not when published outside court. *See id.* A truth defense wasn't addressed. Being true, the statement today cannot source a defamation claim. The court dismisses this claim.

2. *Defamation Claim against Mr. Cartwright.*

TJW alleges that Mr. Cartwright made defamatory statements to third-parties: first, he told a company for which TJW was subcontracting that TJW was "under investigation," that its employees had been sued for "stealing intellectual property," and this information was "something they should be aware of in the course of future dealings;" and second, he told another contractor in the industry that "TJW stole [WMI]'s property" and was going to be "hit with a massive lawsuit." Mr. Cartwright argues these statements were either true or a matter of unactionable opinion.

The court assesses the words within these statements, in their full context but without insight from extrinsic facts. *See Journal-Gazette*, 712 N.E.2d at 457; *Sasser v. State Farm Ins. Co.*, 172 N.E.3d 313, 320 (Ind. Ct. App. 2021), *trans. denied sub nom.*, *Sasser v. State Farm Mut. Auto Ins. Co.*, 175 N.E.3d 272 (Ind. 2021). The statement must "constitute a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with." *In re Ind. Newspapers Inc.*, 963 N.E.2d 534, 549-50 (Ind. Ct. App. 2012) (citation omitted). The court thus declines the invitation to assess these statements—a single publication to one contractor each—in piecemeal fashion and dispense with each part of the statement individually.

The court must assume all allegations as true and accept all reasonable inferences in TJW's favor at this stage; and doing so leads to the conclusion that Mr. Cartwright's statements plausibly were defamatory and false based on this pleading. An investigation could be entirely innocuous, but in context with the statement that TJW committed the criminal offense of theft (stealing), these

6

statements suffice to support a defamation claim. Stealing connotes criminal wrongdoing. No matter a passing reference to "stealing" in the allegations of the underlying state court complaints, in truth the suits concerned no such thing. There was no claim for theft; conversion certainly, but stealing and conversion are different. *See Morisette v. United States*, 342 U.S. 246, 271 (1952) ("certainly not every knowing conversion is a stealing"); *VanWanzeele v. State*, 910 N.E.2d 240, 249 (Ind. Ct. App. 2009) (same). TJW pleaded the criminal implication of Mr. Cartwright's statements [ECF 32 ¶ 54], and that remains a plausible effect of these statements. An accusation of criminal wrongdoing could constitute defamation *per se*. *See Dugan*, 929 N.E.2d at 186.

Though the statements about what the business should know and whether the company would be hit with a lawsuit would not be actionable as "objectively verifiable fact," *Meyer*, 31 N.E.3d at 515, the statement that TJW stole intellectual or other property provides a plausible basis for this claim and to give notice as to what should be explored in discovery, *see Gillaspy v. Club Newtone, Inc.*, 2021 U.S. Dist. LEXIS 157251, 10 (N.D. Ind. Aug. 19, 2021) (citing *Brock v. U.S. Steel Corp.*, 2010 U.S. Dist. LEXIS 6834, 8 (N.D. Ind. Jan. 27, 2010)). Unlike *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 2019 U.S. Dist. LEXIS 107655, 35 (N.D. Ill. June 27, 2019), which found a vague reference to stealing a "story or narrative" as impossible to verify, there is nothing fuzzy or metaphorical about a statement that someone stole a company's property. Property is exactly what someone expects to be stolen, and it remains a statement that could be objectively verified (or debunked) rather than proving equivocal.[1]

TJW also claims that Mr. Cartwright made similar defamatory statements to other customers or contractors, which WMI challenges as insufficient. Having found at least one plausible theory for this claim to proceed, the court cannot grant the motion to dismiss in piecemeal fashion. *See Bilek v.*

---

[1] Mr. Cartwright cites *Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 138-40 (D.C. 2021), which involved the statement that a title company either "caused our money to be stolen or stole it"—an equivocal statement that didn't lend toward objective verification. Of interest, the court noted that had the statement merely been that the title company stole the money, such a statement would have painted the company in an "infamous" and actionable light. *See id.*

7

*Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of parts of claims," differentiating such a motion from one for summary judgment). The court thus denies the motion to dismiss the defamation claim against Mr. Cartwright.

        3.        *Defamation Claim against Mr. Fenn.*

TJW alleges that Mr. Fenn went to a client working with TJW and informed the client that TJW stole "information" from WMI and that a lawsuit was pending. TJW also alleges that Mr. Fenn "implied [the client] should not do business with TJW as a result." Even taking these statements together in context, the statement about a pending lawsuit was true, *see Miranda*, 120 N.E.3d at 1104, and as pleaded the other statements fall well short of communicating objectively verifiable facts, *see Meyer*, 31 N.E.3d at 515.

The vague reference to some undefined "information" leaves one to guess whether this was protectible intellectual property or, among the great range of possibilities, some ephemeral or passing idea. TJW argues that the client was directed to the lawsuit where that context could be gleaned, but whether a statement proves defamatory hinges on the statement's plain meaning without reference to extrinsic facts. *See Journal-Gazette*, 712 N.E.2d at 457. The implication thereafter remains akin to a "subjective view, interpretation, or theory" that would not be actionable. *Wartell v. Lee*, 47 N.E.3d 381, 385 (Ind. Ct. App. 2015). Implying something, nearly by definition, would prove all but impossible to verify objectively as fact. The court grants the motion to dismiss this claim.

        4.        *Defamation Claim against WMI.*

TJW also alleges a defamation claim against WMI based on a *respondeat superior* theory. In Indiana, "vicarious liability will generally be imposed upon an employer . . . where the employee has inflicted harm 'while acting within the scope of employment.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008)). "'[F]or an employee's act to fall

8

'within the scope of employment,' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business.'" *Id.* (quoting *Barnett*, 889 N.E.2d at 283-84). No one has argued that this intentional tort falls outside this rubric, only that the claim against the company should be dismissed because the defamation claims against the individuals should be dismissed. Because the defamation claim against Mr. Cartwright survives, the court denies the motion to dismiss the defamation claim against WMI.

  B. *Unfair Competition.*

    1. *Predatory Pricing against Mr. Davidson and WMI.*

Predatory pricing occurs when a defendant prices products or services below an appropriate measure of cost, such as below marginal cost, "for the purpose of eliminating competitors in the short run and reducing competition in the long run." *Bartholomew Cnty. Beverage Co. v. Barco Beverage Corp.*, 524 N.E.2d 353, 358-59 (Ind. Ct. App. 1988) (quotations and citation omitted); *see Think Tank Software Dev. Corp. v. Chester, Inc.*, 2011 Ind. Ct. App. LEXIS 449, 42 (Ind. Ct. App. Apr. 11, 2011). "[A]lthough price cutting generally is considered a fair and welcomed part of vibrant competition, if prices are cut for the primary purpose of destroying a competing business then the price cutting is considered unfair competition." *Barco*, 524 N.E.2d at 358 (citations omitted).

An unfair competition claim in Indiana can be based on predatory price cutting. *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006) (citing *Barco*, 524 N.E.2d at 358). TJW must show (1) it had a property interest (such as a license, franchise, contract, goods, or services), (2) a valid potential of a business relationship but for the predatory pricing, (3) the defendant intentionally cut prices, (4) the defendant's sole purpose of price cutting was to cause economic injury to TJW, (5) TJW suffered damages as a proximate result of defendant's price cutting, and (6) the defendant lacked a justification for the price cutting. *See Barco*, 524 N.E.2d. at 359; *see also* Ind. Model Civ. Jury Inst. § 3129 (2021) ("Unfair Competition Based on Predatory Pricing—Elements—Burden of Proof").

TJW alleges that WMI, through its chief operating officer (Mr. Davidson), told employees that he intended to sue TJW "out of business" and instructed employees to undercut TJW's prices by bidding at-or-below cost on all projects in which TJW submitted a bid [ECF 32 ¶¶ 22, 30-31]. TJW pleads that WMI consequently "submitted several bids with drastically reduced labor pricing, in an effort to undercut TJW's bids" [*id.* ¶ 49], and that it was Mr. Davidson and WMI's "express intention of harming TJW and putting it out of business" [*id.* ¶ 63]. This pleading suffices to provide notice of a plausible claim. *See Twombly*, 550 U.S. at 555, 570; *see, e.g., Barco*, 524 N.E.2d at 359 ("Since Barco alleged that BCB cut prices with the intent of putting Barco out of business a valid common law cause of action for unfair competition existed.").

Mr. Davidson and WMI argue that TJW didn't plead this claim with particularity, in that the company has not demonstrated that it was at risk of going out of business, that it actually lost business because of these actions, or that there was a general pattern of price cutting, citing the summary judgment opinion in *CDW LLC v. NETech Corp.*, 2013 U.S. Dist. LEXIS 29029, 44 (S.D. Ind. Feb. 7, 2013). Of interest, the court in *CDW* permitted the same claim, earlier at the motion to dismiss stage, to proceed based on the allegation that the defendant "intentionally cut the price of goods and services offered to customers and prospective customers . . . to below the cost of those goods and service . . . for the *sole* purpose of causing economic injury." *CDW LLC v. NETech Corp.*, 2011 U.S. Dist. LEXIS 97388, 8-9 (S.D. Ind. Aug. 26, 2011). Today's case remains at the pleading stage, not summary judgment. There is no heightened pleading standard for unfair competition claims, and this pleading likewise plausibly alleges a predatory price cutting claim in the context of unfair competition. *See Barco*, 524 N.E.2d. at 359-60 (evidence that defendant cut prices with intent of putting another out of business was enough for an unfair competition claim). The court thus denies the motion to dismiss.

2. *Unfair Competition Based on Statements by Mr. Cartwright and Mr. Fenn.*

As to Mr. Cartwright and Mr. Fenn, TJW attempts to use their alleged defamatory statements, through the guise of the underlying state litigation, to support a claim for unfair competition. Mr. Cartwright and Mr. Fenn argue that no court in Indiana has recognized a claim for unfair competition based merely on defamation. TJW says the court should recognize these actions as a heretofore unrecognized species of unfair competition.

"'Unfair competition . . . does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts.'" *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts*, 1015 (5th ed. 1984)). TJW urges the court to find for the first time under Indiana law that defamatory statements can support an unfair competition claim. The company cites *Howmedica Osteonics Corp. v. DJO Glob., Inc.*, 2018 U.S. Dist. LEXIS 227687, 19 (S.D. Ind. Mar. 15, 2018), where a sister court allowed an unfair competition claim based on corporate raiding. That thoughtful opinion is a bit unique in circumstance because the court found that corporate raiding wasn't otherwise an independent cause of action and thus could be pursued within the guise of unfair competition to protect commercial interests. *See id.*

TJW offers a new lens through which to view its defamation allegations: that Mr. Cartwright and Mr. Fenn used the state litigation process in bad faith and as a vehicle to make slanderous statements to customers and contractors with the intention of harming the company's reputation and goodwill [ECF 32 ¶ 63]. First, the difficulty with this theory is that neither Mr. Cartwright nor Mr. Fenn are plaintiffs in the underlying suit, just WMI, so it cannot be said that these men have used the litigation process in bad faith to foster a defamatory campaign. Second, the law need not name another form of unfair competition in the guise of defamation to protect commercial values. *See Felsher*, 755 N.E.2d at 598. The law already lends layers of protection against bad faith litigation—not least through

intrasuit sanctions, or alternatively through an abuse of process claim that addresses an ulterior motive. *See, e.g., Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016). Third, no defamation claim against Mr. Fenn survives, so the allegations of unfair competition likewise lose their footing. For these reasons, the unfair competition claims against these two individuals must be dismissed.

    C.    *Moving Forward.*

The desire of these companies and related parties to engage in zealous litigation isn't to be unreasonably impaired, and each party deserves to have its or his say in court. That said, this interest will not override the court's expectation for the parties to streamline issues for motions practice and their presentation. *See* Fed. R. Civ. P. 1. There was in reality today but a handful of unique allegations. The parties nonetheless devoted twelve briefs to cover largely the same law, subject matter, and arguments. The court doesn't need twelve briefs when three will suffice, and the parties' ability to be efficient will aid the court in being efficient in deliberation and ruling. As a fair suggestion, and indeed with some word of caution, the court commends this course of action for the good trial counsel here.

## CONCLUSION

Accordingly, the court DENIES the motion to dismiss the counterclaim against Wagner-Meinert Engineering, LLC and Wagner-Meinert LLC [ECF 46]; GRANTS IN PART and DENIES IN PART the motion to dismiss the third-party complaint against Michael Davidson, dismissing the defamation claim but preserving the unfair competition claim [ECF 40]; GRANTS IN PART and DENIES IN PART the motion to dismiss the third-party complaint against Kalen Cartwright, dismissing the unfair competition claim but preserving the defamation claim [ECF 42]; and GRANTS the motion to dismiss the third-party complaint against Matthew Fenn [ECF 44].

SO ORDERED.

September 26, 2022                                *s/ Damon R. Leichty*
                                                            Judge, United States District Court